VIRGINIA ELECTRIC AND POWER COMPANY v. JAMES S. CURRIE,
COMMISSIONER OF REVENUE OF THE STATE OF NORTH CAROLINA.

(Filed 3 February, 1961.)

**1. Taxation § 29—**

In allocating for taxation by this State a part of the net income of a unitary business operating in several states, a statutory formula that results in an approximation rather than precision is sufficient in view of the administrative impossibility of allocating specifically the profits earned from the business within the State.

**2. Same: Taxation § 38c—**

In an action by a corporation operating a unitary business in several states to recover a part of income tax paid by it to this State on the ground that the formula used in ascertaining its income attributable to its business in this State resulted in excessive taxation, the burden is on the corporation to show by clear and cogent evidence that the formula used resulted in excessive taxation.

**3. Same—**

The formula used for fixing the rates which a unitary utility operating in several states may charge its customers in this state, and the formula used in allocating for income tax purposes the income of such utility from its operations within this State, relate to entirely different matters involving different factors, and the formula for rate making purposes is not material in determining the fairness of the formula used in the allocation of income.

**4. Same: Constitutional Law §§ 24, 27— Evidence held not to show that allocation of income for taxation by this State was not fair or was burden on interstate commerce.**

Plaintiff is a unitary utility operating in several states. It filed petition with the Tax Review Board requesting it be permitted to allocate its income for taxation by this State in accordance with its accounting system which maintained a separate schedule for expenses and revenues from operations in this State, G.S. 105-134-II(4) (b), or, in the event such relief could not be granted, that it be authorized to allocate income in this State either by substituting the wage factor for the gross receipts factor, or by adding the wage factor to the gross receipts factor as permitted by G.S. 105-134-II(4) (a). The Board held that the gross receipts formula was inequitable under the particular circumstances and permitted plaintiff to allocate its income by adding the wage factor to the gross receipts factor. Plaintiff paid the tax computed on this basis under protest and sued to recover the difference between the tax so computed and the tax computed on the separate accounting formula. Plaintiff introduced evidence to the effect that its rates everywhere are the same, that in this State it averaged 10 customers per mile of line, while in its operations in other states it had 24 customers per mile, that it had a larger capital investment per customer in North Carolina than elsewhere and that its revenue per kilowatt hour was less in this State than in the other states in which it operated. *Held:* Plaintiff had requested in the alternative the very formula used by the Board, and

has failed to show by clear and cogent evidence that the formula used was intrinsically arbitrary or produced an unreasonable result or that the income tax computed under the formula deprived it of property without due process of law or constituted an unconstitutional burden on interstate commerce, and judgment that it recover nothing will not be disturbed. Federal Constitution, Art. I, § 8(3) and the Fourteenth Amendment to the Federal Constitution.

**5. Same—**

In allocating for taxation by this State a part of the net income of a unitary business operating in this State and several other states, it is not required that its equipment appropriately employed in this State be equally productive with that employed in the other states, but the mutual dependency of the interrelated activities in furtherance of the entire business sustains an apportionment formula which results in a reasonable approximation of its income earned here, it being required only that the formula not be intrinsically arbitrary or produce an unreasonable result.

**6. Appeal and Error § 38—**

An exception not brought forward and discussed in the brief is deemed abandoned. Rule of Practice in the Supreme Court No. 28.

APPEAL by plaintiff from *Hobgood, J.,* Second May 1960 Regular Civil Term of WAKE.

Civil action, by virtue of G.S. 105-267, against the State Commissioner of Revenue to recover an additional income tax of $46,521.43, plus $3,721.71 interest, totaling $50,243.14, for the year 1953, paid under protest.

The parties, pursuant to G.S. 1-184-185, waived trial by jury, and agreed that the judge might find the facts, make conclusions of law, and render judgment thereon.

The facts found by the judge, which are material and essential to a decision of this appeal, are summarized, except when quoted:

Virginia Electric and Power Company, hereafter called VEPCO, is a Virginia corporation engaged in the year 1953 in the business of generating electricity, and transmitting, distributing and selling the same in the States of Virginia, West Virginia, and the northeastern part of North Carolina. It distributes gas only in the Hampton Roads area of Virginia. (The undisputed evidence, though not incorporated in the findings of fact, shows that the North Carolina Tax Review Board by Administrative Order No. 27 held that the operation of the gas business by VEPCO in Virginia was not a part of the company's unitary business in North Carolina, and directed that net income from such part of its business be excluded from income apportionable to North Carolina).

On 9 April 1954, following an extension of time given by defendant

to file its income tax return for 1953, VEPCO, pursuant to the provisions of G.S. 105-134, II, Foreign Corporations, 3, in force in 1953, filed a North Carolina income tax return based on the statutory allocation formula there set forth. This return stated that VEPCO'S total gross income for 1953 was $79,911,518.00, its total allowable expenses for the year $62,206,103.00, its total net income, electric department, $17,705,415.00, the proportion taxable in North Carolina 7.302351%, $1,292,911.00, its total tax due at 6%, $77,574.66. VEPCO paid no tax on this return.

On the same day VEPCO filed another North Carolina income tax return stating its total gross income for 1953 was $5,835,719.00, its total allowable expenses for the year $5,518,605.00, its total net income $317,114.00, proportion taxable in North Carolina 100%, its total tax due at 6% $19,026.84, interest due $52.13, total amount due $19,078.97. VEPCO paid to the State on this return $19,078.97.

(These returns were introduced in evidence by VEPCO. The return upon which no tax was paid is plaintiff's Exhibit 1, and the return upon which $19,078.97 was paid is its Exhibit 2. We have stated the contents of these returns somewhat more fully than set forth in the findings to avoid setting them forth later. We believe what we have done is in the interest of clarity).

At the time VEPCO paid to the State of North Carolina income tax in the amount of $19,078.97, it "filed a petition with the North Carolina Tax Review Board asking authority to pay its tax on a separate accounting basis or, in the alternative, on the basis of substitution of the payroll formula for the gross receipts formula or, as a third alternative, in the event neither of the first two alternatives was granted, to allow VEPCO to pay an income tax to the State of North Carolina for the year 1953 based on the substitution of the average of the gross receipts and payroll ratios for the statutory formula provided in G.S. 105-134-II(3)."

This is the petition summarized in the findings of fact:
"1. The Company is a Virginia corporation duly qualified to do business in North Carolina. It conducts an electric utility business in Northeastern North Carolina. Its principal North Carolina office is located at Williamston.
"2. The Company is subject to the North Carolina income tax. As a foreign corporation, it is required, in accordance with North Carolina General Statutes, §105-134-II, to 'pay annually an income tax equivalent to six per cent of a proportion of its entire net income' determined in accordance with the gross re-

ceipts formula contained in paragraph (3) of that subsection. If the Company's entire net income from electric operations for 1953 were apportioned in accordance with this formula, net income of $1,292,911 would be allocated to North Carolina and the tax would be $77,574.66. The details of this computation are shown on Exhibit 1. The Company believes that such apportionment operates to subject it to taxation on a greater portion of its net income than is reasonably attributable to business or earnings within North Carolina for the reasons herein stated. The Company's service area in North Carolina covers the extreme northeastern section of the state which is predominantly agricultural and, as a consequence, thinly populated. The largest incorporated community served in North Carolina is Roanoke Rapids with a population of 8,156 (1950 census). By contrast the Company serves most of the major population centers in Virginia, including the Richmond, Petersburg, Hopewell area; the Norfolk, Portsmouth, Newport News area; and the Arlington, Alexandria, Fairfax area. The Company during 1953 had uniform rates throughout the territory served, with minor exceptions not here material. As a consequence it is obvious that the Company's operations are relatively more profitable in Virginia than in North Carolina. To further illustrate this point there were 24 customers per mile of distribution line in Virginia and West Virginia at December 31, 1953 as compared with 10 in North Carolina. The investment in distribution facilities in North Carolina per customer amounted to $401 at December 31, 1953 as compared with an investment of only $266 in Virginia and West Virginia. Any additional evidence furnished comparing the operations of the Company in Virginia and West Virginia with North Carolina could only add weight to the Company's contention that the apportionment of net income to North Carolina on the basis of the gross receipts formula prescribed in §105-134-II(3) of the North Carolina General Statutes must operate to subject it to taxation on a greater portion of its net income than is reasonably attributable to business or earnings within North Carolina.

"3. The Company maintains in its books of account a detailed allocation of receipts and expenditures attributable to its North Carolina operations. These detailed allocations, in the opinion of the Company, reflect more clearly than the applicable allocation formula or alternative formulas prescribed by the statute the income attributable to the business of the Company in North

Carolina. A statement of this computation is shown on Exhibit 2. Net income in 1953 from North Carolina operations so determined would be $317,114, and the tax would be $19,026.84 The Company is of the view that the separate accounting method is proper and best reflects its income and earnings attributable to North Carolina and that the Board should permit the Company to follow the separate accounting method as authorized by §105-134-II-(4) of the North Carolina Statutes in filing its return.

"4. The Company has ascertained the ratio of all salaries, wages, commissions and other compensation paid or incurred by it in North Carolina for services during 1953 to total salaries, wages, commissions and other compensation paid by it in connection with its electric business. If the factor so determined were substituted for the gross receipts factor and applied to the Company's 1953 net income from its electric operations, as authorized by §105-134-II-(4) of the North Carolina Statutes net income of $892,031 would be allocated to North Carolina and the resulting tax would be $53,521.86. The details of this computation are shown on Exhibit 3, Section I. The Company submits that allocation on this basis, while not as just, fair or proper as the separate accounting basis, is obviously more equitable in view of the facts of this case than allocation by the gross receipts factor.

"5. If the wage factor were averaged with the gross receipts factor rather than substituted for such factor, as set forth in paragraph 4 above, and applied to the Company's 1953 net income from its electric operations, as authorized by §105-134-II-(4) of the North Carolina Statutes net income of $1,092,471 would be allocated to North Carolina and the resulting tax would be $65,548.27, as shown on Exhibit 3, Section II. While the allocation on this basis is not as just, fair or proper as the separate accounting method or as equitable as the use of the wage factor alone it is, nonetheless more equitable than allocation by use of the gross receipts factor alone.

"THE COMPANY, accordingly, petitions the Board for relief as follows:

"(1) That the Board authorize the Company to file its return and pay its income tax for 1953 in accordance with the separate accounting method shown on Exhibit 2 as permitted by General Statutes, §105-134-II-(4) (b); or

"(2) If the prayer contained in (1) is not granted: (a) the Board

authorize the Company to file its return and pay its income tax for 1953 in accordance with the allocation based on the substitution of the wages factor for the gross receipts factor as permitted by General Statutes, §105-134-II (4) (a), as shown on Exhibit 3, Section I; or (b) in the alternative the Board authorize the Company to file its return and pay its income tax for 1953 in accordance with the allocation based on the average of the wages and gross receipts factors as permitted by General Statutes, §105-134-II (4) (a), as shown on Exhibit 3, Section II."

We insert the petition here rather than later on in the interest of clarity. It is dated 9 April 1954.

"For the year 1953, the total gross receipts of VEPCO from its Electric Operations everywhere was $79,904,007, and its total gross receipts in North Carolina were $5,834,871, or 7.302351% of its gross receipts from all of its Electric Operations; the total payroll of VEPCO for its Electric Operations everywhere was $19,246,057, and its total payroll in North Carolina for that year was $969,651, or 5.038180% of its total payroll for Electric Operations everywhere; that the average of VEPCO'S gross receipts and payroll ratios for the State of North Carolina for the year 1953 was 6.170266%."

"The Tax Review Board of North Carolina is an administrative agency duly created and established by the General Assembly of North Carolina and was, at all times relevant to this action, vested with the authority and power under G.S. 105-134-II(4) of varying within limitations the statutory income apportionment formula applicable to any particular multi-state corporation upon a showing by 'clear, cogent and convincing proof' that the applicable statutory allocation or apportionment formula would subject the taxpayer ' . . . to taxation on a greater portion of its net income than is reasonably attributable to business earnings within this State . . .' and upon a further showing by the petitioning taxpayer that it is, by the same standard of proof, entitled to the relief prayed for."

"The Tax Review Board, after hearing on June 28, 1955, issued its Administrative Order No. 27 permitting VEPCO to substitute for the statutory gross receipts formula applicable to it the average of the gross receipts and payroll ratios, thus granting VEPCO'S third alternative prayer for relief in its petition filed with the Tax Review Board. This resulted in allocated North Carolina net income for the tax year 1953 of $1,092,471 and in total income tax due North Carolina of $65,548.27. The plaintiff duly filed exceptions to the decision of the Tax Review Board, which exceptions were overruled by the Board.

The decision of the Tax Review Board was not appealed to the Superior Court."

This is the decision of the North Carolina Tax Review Board, which is referred to in the finding of fact, and which we insert here rather than later in the interest of clarity:

"At a meeting of the TAX REVIEW BOARD held in the City of Raleigh on July 29, 1955, the full membership of the Board formally considered the *Exceptions to Findings* which were filed with the Board on July 27, 1955, on behalf of the Virginia Electric and Power Company pursuant to G.S. 105-163, such exceptions having been made to the findings and determinations of the Tax Review Board, insofar as they relate to the income years 1953, 1954 and subsequent years, contained in Administrative Order No. 27 entered June 28, 1955.

"In giving full consideration to the matter, the Board at the aforesaid meeting found and determined:

"1. That Virginia Electric and Power Company (hereinafter referred to as the Company) filed separate petitions before the Tax Review Board on November 30, 1953, April 12, 1954, and March 16, 1955 concerning the allocation of its net income for the income years 1952, 1953 and 1954 respectively. That after hearings had been duly held on said petitions, the Board, at a meeting on June 28, 1955 gave full consideration to evidence, contentions and arguments as set forth in the above-mentioned petitions and hearings, and entered its Administrative Order No. 27 covering taxable years 1952, 1953, 1954 and subsequent years, granting the taxpayer-company one of its alternative prayers for relief.

"2. That in each of the said petitions, the Company requested that it be authorized to report income to this State on the basis of separate accounting as permitted by G.S. 105-134, II, 4(b), or, in the event such relief could not be granted, that it be authorized to allocate income to this State either by substituting the wage factor for the gross receipts factor, or by adding the wage factor to the gross receipts factor, as permitted by G.S. 105-134, II, 4(a).

"3. That on the basis of all the evidence, contentions and arguments set forth in the petitions, records, and hearings, the Board concluded that the applicable statutory provision, G.S. 105-134, II, 3, which required the Company to apportion its income according to the gross receipts formula described therein, had operated and would so operate as to subject the Company to taxation in this State on a greater portion of its net income than could reasonably be attributed to business or earnings within this State.

"4. That accordingly, the Board, in its Administrative Order No.

27, granted to the Company the alternative relief requested in each of its petitions, by authorizing the Company to allocate its income for income tax purposes on the basis of a ratio obtained by adding a salaries and wages factor to the gross receipts factor as permitted by G.S. 105-134, II, 4(a).

"5. And, that although such relief was in accordance with one of the alternative prayers for relief asked by the Company in each of its above-mentioned petitions, on July 27, 1955, the Company filed formal exceptions to the findings and determinations of the Board, as they relate to income years 1953, 1954 and subsequent years, contained in Administrative Order No. 27, on the grounds:

" '(1) The allocation of net income to North Carolina on the basis of the arithmetical average of the gross receipts ratio and the salaries and wages ratio subjects the Company to income taxation by North Carolina on a greater portion of its net income than is reasonably attributable to business or earnings within the State of North Carolina.

" '(2) The Company employs on its books of account a detailed allocation of receipts and expenditures which reflects more clearly than any allocation formula prescribed by G.S. Sec. 105-134 the income attributable to its business within the State of North Carolina. Such separate accounting best reflects the income and earnings of the Company attributable to North Carolina. The Board was in error in refusing to permit the determination of income subject to the North Carolina income tax on the basis of such separate accounting method rather than on the basis of an allocation formula.'

"The TAX REVIEW BOARD, having formally passed upon the above-quoted exceptions pursuant to G.S. 105-163, hereby makes the following rulings:

"1. That the Board was correct in its finding as stated in Administrative Order No. 27 that the application of the formula required by G.S. 105-134, II subsection 3 has operated and will so operate as to subject the Company to taxation on a greater portion of its net income than is reasonably attributable to business or earnings within this State, and

"2. That the Board was correct in finding that the allocation of the Company's net income to North Carolina on the basis of the arithmetical average of the gross receipts ratio and the salaries and wages ratio

" (a) more accurately reflects the Company's net income attributable to this State than does the applicable statutory formu-

la (i. e. the formula required by G.S. 105-134, II subsection 3), and

"(b) more accurately reflects the Company's net income attributable to this State than would the substitution of the salaries and wages factor for the gross receipts factor, as authorized by G.S. 105-134, II subsection 4(a), and

"3. That therefore, the Board was acting within its authority as set out in G.S. 105-134, II subsection 4 in granting its Administrative Order No. 27 the aforementioned relief, for which the petitioner asked in its alternative prayer for relief, and to which the Board found the petitioner entitled."

Whereupon, defendant assessed VEPCO with additional State income tax for 1953 in the amount of $46,521.43 ($65,548.27 less $19,026.84 makes $46,521.43), plus $3,721.71 for interest, for a total of $50,243.14. Plaintiff paid this additional State income tax, and has followed the statutory procedure to sue for its recovery.

The separate accounting system devised by VEPCO was developed primarily for rate making purposes with some adjustments for income tax purposes. It has been accepted for rate making purposes by the three States in which it operates. This separate accounting system is based upon numerous and varying allocation formulas, some of which are based upon a combination of allocations.

The electrical operation of VEPCO is an integrated system with unity of ownership, management, and production and distribution of electrical power. It is not known by VEPCO whether a unit of electric energy generated in North Carolina or in Virginia will be sold in Virginia, West Virginia or North Carolina; nor in which States expense items such as leakage occur, nor to which State such a leakage item should be charged. The electric business done by VEPCO in North Carolina contributes to the success of the over-all electric operations of VEPCO in the three States.

VEPCO has failed to show by clear, cogent and convincing proof that the allocation formula (allocation based on the average of the wages and gross receipts factors as permitted by G.S. 105-134-II, 4) which the State Tax Review Board permitted it to use, as requested by it in one of its alternative prayers for relief in its petition for review of apportionment of net income, year 1953, filed with the State Tax Review Board, (and above set forth), subjects VEPCO to taxation by North Carolina on a greater proportion of its net income than is reasonably attributable to its earnings or business in North Carolina.

VEPCO has failed to show that the State Tax Review Board abused its statutory discretion, or acted arbitrarily, or unlawfully in per-

mitting it to use the allocation formula it requested in one of its alternative prayers for relief as above set forth.

VEPCO has failed to show by clear, cogent and convincing proof that its separate accounting system reflects more clearly the income attributable to its business in North Carolina than does the allocation formula, which the State Board of Tax Review permitted it to use at its request, as above set forth.

Based upon its findings of fact the judge made the following conclusions of law:

"1. That VEPCO was not entitled to base its income tax return and payment of its income tax for the year 1953 on its separate accounting method.

"2. That the Tax Review Board did not abuse the discretion vested in it by the General Assembly and did not act arbitrarily, unreasonably or unlawfully in permitting VEPCO to use an alternative allocation formula based upon the arithmetical average of its gross receipts and salaries and wages ratios in determining the portion of its income reasonably attributable to its business or earnings within North Carolina for income tax purposes for the year 1953.

"3. That the Commissioner of Revenue, in assessing the additional income tax which VEPCO seeks to recover by this action, had no alternative other than to follow the order of the Tax Review Board permitting VEPCO to use the alternative formula in computing the portion of its net income reasonably attributable to its North Carolina business for the 1953 income tax year.

"4. That the action of the Tax Review Board and the defendant's assessment were in compliance with G.S. 105-134, and such action and the section on which it was based, do not constitute, as applied to the plaintiff, an undue burden on interstate commerce in violation of the Fourteenth Amendment or the Commerce Clause of the United States Constitution.

"5. That the plaintiff, VEPCO, is not entitled to recover anything by this action."

Whereupon, the judge adjudged and decreed that VEPCO recover nothing, and dismissed the action, taxing VEPCO with the costs.

From the judgment VEPCO appealed.

*W. T. Joyner, W. T. Joyner, Jr., John W. Riely, Joyner & Howison, Hunton, Williams, Gay, Powell & Gibson for plaintiff, appellant.*

*T. W. Bruton, Attorney General, Peyton B. Abbott, Assistant Attorney General, Lucius W. Pullen, Assistant Attorney General, and Thomas L. Young, Assistant Attorney General for the State.*

PARKER, J.   The standard to be applied in a suit to recover a state tax paid under protest is set forth in G.S. 105-267. The relevant part of the statute is: "If upon the trial it shall be determined that such tax or any part thereof . . . , was for any reason invalid or excessive, judgment shall be rendered therefor, with interest, and the same shall be collected as in other cases."

G.S. 105-134 in effect during the year 1953 is applicable here, not G.S. 105-134 as it now appears due to changes made in later years by the Legislature. VEPCO'S brief is based on G.S. 105-134 in force for the year 1953.

Since VEPCO operates in three States, its net income must be allocated to North Carolina. A state in attempting to put upon a business extending into several states "its fair share of the burden of taxation" is "faced with the impossibility of allocating specifically the profits earned by the processes conducted within its borders," *Underwood Typewriter Co. v. Chamberlain,* 254 U.S. 113, 65 L. Ed. 165, and as a matter of practical tax administration it has been "declared that 'rough approximation rather than precision' is sufficient," *International Harvester Co. v. Evatt,* 329 U.S. 416, 422, 91 L. Ed. 390, 395.

The statutory allocation formula applicable to VEPCO for the year 1953 is set forth in G.S. 105-134-II-3, in force in 1953 as follows: "The total income of such corporation shall be apportioned to North Carolina on the basis of the ratio of its gross receipts in this state during the income year to its gross receipts for such year within and without the state."

For the year 1953 VEPCO filed a state income tax return in accord with the above statutory allocation formula showing tax due at 6% (G.S. 105-134-II-3) in the amount of $77,574.66. It did not pay this tax. The State Tax Review Board, after considering VEPCO'S petition for review of apportionment of net income for the year 1953, in accordance with the powers vested in it by G.S. 105-134-II-4, upheld its contention that the statutory allocation formula, G.S. 105-134-II-3, has operated and will operate so as to subject VEPCO to taxation on a greater portion of its net income than is reasonably attributable to its business or earnings within the State. Whereupon, the State Board of Tax Review, acting pursuant to the powers vested in it, held that the allocation of VEPCO's net income to North Carolina on the basis of the arithmetical average of the gross receipts ratio and the salaries and wages ratio, as requested by VEPCO in its petition to the State Board of Tax Review in one of its prayers for alternative relief, and which would show a tax due to North Carolina in the sum of $65,548.27, more accurately reflects VEPCO'S net in-

come reasonably attributable to North Carolina than does the statutory allocation formula required by G.S. 105-134-II-3, and more accurately reflects VEPCO'S net income reasonably attributable to this State than would the substitution of the salaries and wages factor as authorized by G.S. 105-134-II-4. Defendant assessed VEPCO with an income tax of $65,548.27, less the amount of $19,078.97 it had already paid on one of the income tax returns it filed, for the year 1953, in accordance with the allocation formula based on the gross receipts ratio and the salaries and wages ratio. It is to be noted that VEPCO in its petition, above set forth, states in respect to the allocation formula of its net income to North Carolina on the basis of the arithmetical average of the gross receipts and the salaries and wages ratio: "While the allocation on this basis is not as just, fair or proper as the separate accounting method or as equitable as the use of the wage factor alone it is, nonetheless more equitable than allocation by use of the gross receipts factor alone." VEPCO in this petition does not state, nor even intimate, that a State income tax levied in accord with this allocation formula would be excessive, or levied in accord with this allocation formula would be on a greater portion of its net income than is reasonably attributable to its business or earnings within this State.

VEPCO in its brief states two questions are presented for decision: One, was not the income tax exacted by defendant for the year 1953 excessive? Two, was not the exaction of the tax a deprivation of VEPCO'S property without due process of law and an unconstitutional burden on interstate commerce?

*Norfolk & W. R. Co. v. North Carolina,* 297 U.S. 682, 80 L. Ed 977, was an action to recover back the amount of a state income tax paid by an interstate railroad company as having been improperly assessed. The Court said: "We must bear in mind steadily that the burden is on the taxpayer to make oppression manifest by clear and cogent evidence."

*Butler Brothers v. McColgan,* 315 U.S. 501, 86 L. Ed. 991, was a suit to recover back a corporate franchise tax. In that case the Court says: "One who attacks a formula of apportionment carries a distinct burden of showing by 'clear and cogent evidence' that it results in extraterritorial values being taxed."

VEPCO contends that the tax assessed under the allocation formula of the gross receipts ratio and the salaries and wages ratio is shown by its evidence to be excessive. Its evidence falls into two categories.

First. Its territory in northeastern North Carolina is largely agricultural and thinly settled. Its territory in Virginia includes the

largest metropolitan areas. Its rates everywhere are the same. There are 24 customers per mile outside of North Carolina, and 10 in North Carolina. Investment in distribution facilities per customer is $401.00 in North Carolina, and $266.00 elsewhere. Each added dollar of investment means more taxes and depreciation, which must be deducted to reach net income. Revenue per kilowatt hour was $1.50 in North Carolina and $1.96 elsewhere. Taxes are heavier in North Carolina. Practically all of its generating facilities are in Virginia.

Second. VEPCO maintains in its books of account a detailed allocation of receipts and expenditures attributable to its North Carolina operations, which shows a net income of $317,114.00, and an income tax due to North Carolina for 1953 of $19,026.84.

A. M. Clement, assistant treasurer of VEPCO, testified that VEPCO keeps a detailed allocation of receipts and expenses which shows the income attributable to its business in North Carolina, and that the State Utilities Commission considered the earnings of VEPCO thus shown in the rate case in which increases were granted in June 1954. That the test used in the rate case was the 12 months ended 30 September 1953. The data presented in the rate case were prepared on the same separate accounting basis for 1953. The rate of return is based on investment of VEPCO, and not on reproduction cost. The witness was asked a number of other questions in respect to whether the State Utilities Commission accepted these figures, but the judge sustained objections to the questions, though he permitted the witness to put his answers in the record. VEPCO excepted to the judge's rulings, but did not bring forward the exceptions, and discuss them in its brief. Under our rules such exceptions are deemed abandoned. Rule 28, Rules of Practice in the Supreme Court, 221 N.C. 544, 563; *Waddell v. Carson*, 245 N.C. 669, 97 S.E. 2d 222.

Robert S. Boyd, manager of the appraisal division of Stone & Webster Engineering Corporation, testified for VEPCO as an expert on matters of allocation of income. He expressed the opinion that the use of the formula insisted upon by defendant would attribute to North Carolina more income than is reasonably attributable to its operations in North Carolina, and in consequence would attribute to North Carolina income earned outside of North Carolina. He further stated that, in his opinion, VEPCO'S books of account showing a detailed allocation of receipts and expenditures attributable to North Carolina would allot to North Carolina its proper share of VEPCO'S net income.

*John Deere Plow Co. v. Franchise Tax Board*, 38 Cal. 2d 214, 238 P. 2d 569, appeal dismissed for want of a substantial federal question,

POWER COMPANY *v.* CURRIE, COMR. OF REVENUE.

343 U.S. 939, 96 L. Ed. 1345, was an action to recover an additional franchise tax assessed against it for the year 1938, based upon income for the year 1937. Plaintiff argued that the formula used operated to distort the productivity of its California business, and cannot work properly in reasonably reflecting the proportionate part of the unitary income attributable to California. In reply to this argument, the Court said: "But in so arguing plaintiff fails to take into account the underlying concept of formula apportionment in the allocation of income from a unitary business: that the unitary income is derived from the functioning of the business as a whole, to which the activities in the various states contribute; and that by reason of such interrelated activities in the integrated overall enterprise, the business done within the state is not truly separate and distinct from the business done without the state so as reasonably to permit of a segregation of income under the separate accounting method rather than use of the formula method in assigning to the taxing state its fair share of taxable values."

VEPCO distributes gas only in the Hampton Roads area of Virginia. The North Carolina Tax Review Board by Administrative Order No. 27 held that this distribution of gas was not a part of VEPCO'S unitary business, and directed that any net income from such gas business be excluded from income attributable to North Carolina.

In the apportionment of a unitary business the formula used must give adequate weight to the essential elements responsible for the earning of the income, and must not include income unconnected with the unitary business, but its propriety in a given case does not require that the factors appropriately employed be equally productive in the taxing state as they are for the business as a whole. Varying conditions in the different states wherein the integrated parts of the whole business function must be expected to cause individual deviation from the general average of the factors in the formula equation in all the different states wherein the integrated parts of the whole business function, and yet the mutual dependency of the interrelated activities in furtherance of the entire business sustains the apportionment process. *John Deere Plow Co. v. Franchise Tax Board, supra; Ford Motor Co. v. Beauchamp,* 308 U.S. 331, 84 L. Ed. 304; In the matter of *The North American Cement Corporation v. Graves,* 243 App. Div. 834, 278 N.Y.S. 920; in Court of Appeals 269 N.Y. 507, 199 N.E. 510; judgment affirmed, 299 U.S. 517, 81 L. Ed. 381; *Crane Co. v. Carson,* 191 Tenn. 353, 234 S.W. 2d 644, cert. den., 340 U.S. 906, 95 L. Ed. 655.

There is "no necessary inconsistency between the accuracy and fairness of the taxpayer's accounting and the different result obtained by the formula method of allocating income," *Edison California Stores v. McColgan,* 30 Cal. 2d 472, 483, 183 P. 2d 16, 23, since "a particular accounting system, though useful or necessary as a business aid, may not fit the different requirements when a state seeks to tax values created by business within its borders," *Butler Brothers v. McColgan,* 315 U.S. 501, 507, 86 L. Ed. 991, 996, so that for "taxation purposes the one does not impeach the other," *Edison California Stores v. McColgan, supra,* at page 483 in the California reports, at page 23 in the Pacific Reporter.

It seems the only requirement is that the allocation formula used be not intrinsically arbitrary or produce an unreasonable result. Such was the situation in the case of *Hans Rees' Sons v. State of North Carolina ex rel. Maxwell,* 283 U.S. 123, 75 L. Ed. 879, where the Court recognized the unitary character of the business as a manufacturer and selling enterprise extending into several states and to which a formula method of apportionment was appropriate, but refused to approve the particular formula employed for the reason that it consisted simply of the property factor and failed to give proper weight to the extensive activities of the company without the state, so that the result reached was unreasonable. See *Butler Brothers v. McColgan,* 17 Cal. 2d 664, 678, 111 P. 2d 334, 341, affirmed 315 U.S. 501, 86 L. Ed. 991.

VEPCO in its complaint has no allegation of any kind in respect to the consideration by the State Utilities Commission in fixing rates for its services of its books of account wherein are kept a detailed allocation of receipts and expenses showing the income attributable to its business in North Carolina. Neither has it favored us in its brief with any argument or discussion as to how such consideration is material here. The fixing of rates by the State Utilities Commission to be charged by VEPCO in North Carolina for its services, and the establishment by North Carolina of an allocation formula so that VEPCO will bear its fair share of the burden of taxation in North Carolina, are entirely different matters, and involve different factors.

VEPCO in the petition which it filed with the North Carolina Tax Review Board asking authority to pay its income tax to North Carolina on a separate accounting basis or, in the alternative, on the basis of substitution of the payroll formula for the gross receipts formula or, as a third alternative, in the event neither of the first two alternatives was granted, to allow it to pay an income tax to North Caro-

lina for the year 1953 on the substitution of the average of the gross receipts and payroll ratios for the statutory formula, which petition is set out in full in the statement of facts, sets forth a large part of the facts shown in the first category of its evidence at the hearing before Judge Hobgood. It is reasonable to assume that the additional facts shown in the first category of its evidence before Judge Hobgood was known by VEPCO when it filed this petition. In this petition there is no suggestion or intimation that if VEPCO was allowed to use the third alternative, the tax imposed would be excessive or the taxing of income not fairly attributable to its business in North Carolina. In this petition it is apparent that VEPCO took the position that though it could show by a separate accounting system, its activities in North Carolina were less profitable than those without North Carolina, and what the net earnings in North Carolina was according to its separate accounting system, it did not preclude the use of a formula as a method of apportionment of its unitary income. It is also apparent that VEPCO, when it requested that it be permitted to use the formula here used by defendant, thoroughly recognized the fact that its electric business in North Carolina was an integrated unit in its whole electric business, providing the advantages of a unitary business through unity of ownership, unity of operation by centralized purchasing, management, advertising and accounting, and unity of use in the centralized executive force and general system of operation.

Analyzing the evidence in the record before us, we are of the opinion, and so hold, that VEPCO has not carried the burden "to make manifest by clear and cogent evidence" *(Norfolk & W. R. Co. v. North Carolina, supra)* that the additional income tax here imposed is excessive, or that it taxes VEPCO on net income not reasonably attributable to its business in North Carolina, or that the State Tax Review Board abused its statutory discretion, or acted arbitrarily or unlawfully in permitting it to use an allocation formula it requested permission to use. The income tax computed by defendant here on VEPCO for the year 1953 is not open to constitutional objections as operating to tax extraterritorial income in violation of the due process clause of the Fourteenth Amendment to the Federal Constitution, or as being an unconstitutional burden on interstate commerce.

There is competent evidence to support the essential findings of fact, which findings support the conclusions of law made by the hearing judge. It therefore follows that the trial judge properly sustained the

additional income tax for 1953 assessed against VEPCO by defendant. All VEPCO'S assignments of error are overruled.

The judgment is

Affirmed.