AMERICAN BAKERIES COMPANY v.
W. A. JOHNSON, COMMISSIONER OF REVENUE OF NORTH CAROLINA.

(Filed 22 May 1963.)

1. **Taxation § 28b—**

  The mere fact that a foreign corporation engaged in business in this and other states owns a subsidiary corporation in another state, which subsidiary does no business in this State and owns no property here, does not in itself require the parent corporation to prorate the dividends received from such subsidiary to all the states in which the parent corporation does business, even though the subsidiary is engaged in a business similar to that of the parent corporation.

2. **Same—**

  Plaintiff taxpayer was engaged in the wholesale bakery business, manufacturing and selling to customers not owned or controlled by it. Plaintiff taxpayer owned a subsidiary engaged in the manufacture and retail of bakery products, selling same to the general public, including restaurants and cafes, but the subsidiary purchased no products from plaintiff, and the subsidiary did no business in this State and owned no property here. *Held:* Plaintiff is not liable for income tax to this State on dividends received by it from the subsidiary. G.S. 105-134.

APPEAL by plaintiff from *Clark, J.*, December Civil Term 1962 of WAKE.

This cause came on to be heard in the Superior Court of Wake County, without the intervention of a jury and upon a stipulation of fact, and it having been further stipulated that the court might find the facts from the stipulation of facts and from other evidence not inconsistent with the stipulated facts.

The trial judge found the facts, made his conclusions of law and entered judgment as follows:

"1. This is an action to recover income taxes in the amount of $6,003.76 paid under protest for the years 1953 and 1954 brought against James S. Currie, the then Commissioner of Revenue of the State of North Carolina, it having been stipulated in open court that W. A. Johnson, the present Commissioner of Revenue, be substituted as party defendant.

"2. The petitioner is American Bakeries Company, a Delaware corporation with its principal office in Chicago, Illinois.

"3. The deficiencies as determined by the Commissioner are in income taxes for the taxable years 1953 in the amount of $2,692.92 plus interest as provided by law and 1954 in the amount of $1,675.75 plus interest as provided by law, all of which is in dispute.

"4. The facts upon which the petitioner American Bakeries Company relies as the basis of its position are as follows:

"(a)   Prior to June 13, 1953 all of the operations in North Carolina were by the American Bakeries Company, a Florida corporation which had no subsidiaries.

"(b)   As of June 14, 1953 the American Bakeries Company (Florida) merged with Purity Bakeries Corporation, a Deleware corporation. Purity Bakeries Corporation, the successor corporation, changed its name to American Bakeries Company.

"(c)   After the merger, American Bakeries Company owned the subsidiaries which it had formerly owned under its old name, Purity Bakeries Corporation, which had been changed at the time of the merger to American Bakeries Company. At that time, Grennan Bakeries Company, a subsidiary of Purity Bakeries Corporation, also changed its name to the former name of the parent.

"(d)   The subsidiaries of American Bakeries Company as of June 14, 1953, were as follows:

"Purity Bakeries Corporation (Delaware)
Purity Bakeries Service Corporation (Illinois)

Taystee Baking Company (Illinois)

Cushman's Sons, Inc. (New York)

"(e)   The Purity Bakeries Service Corporation and the Taystee Baking Company were merged into the parent company as of December 31, 1953.

"(f)   As of December 31, 1953, the American Bakeries owned only two subsidiaries, Purity Bakeries Corporation (formerly Grennan Bakeries Company) and Cushman's Sons, Inc. Purity Bakeries Corporation had always been a wholly owned subsidiary and after the redemption of certain outstanding stock in December 1956, Cushman's Sons, Inc. became a wholly owned subsidiary of American Bakeries Company.

"(g)   The Purity Bakeries Service Corporation (Illinois), prior to its merger with the parent company, American Bakeries Company, was the service corporation for all of the companies mentioned. As a service corporation, it made payment for salaries and administrative expenses, billing the parent company or the respective subsidiary for the amount due from each. The amount charged as a Service Charge was determined by a proration based on the production value of products made by each company. In other words, until 1953 the inter-company service arrangement was handled through the Purity Bakeries Service Corporation. This arrangement also included Cushman's Sons, Inc.

"(h)   After December 31, 1953, Cushman's Sons, Inc. was one of the two subsidiaries of American Bakeries Company. However, the parent company after the merger with the service corporation continued to handle the administrative expenses for the remaining subsidiaries, Purity Bakeries Corporation (Delaware) and Cushman's Sons, Inc., on the same basis as it had formerly been handled by the service corporation. In other words, after 1953, the inter-company service arrangement was handled through the parent with Cushman's Sons, Inc. instead of through the service company, which had been absorbed into the parent.

"(i)   The parent, American Bakeries Company, made a service charge to its subsidiaries which was determined by a formula whereby the percentage to be allocated to each company was determined by the production value of products made by each company to the total production value of products made by all of the companies, parent and subsidiaries.

"A breakdown by corporation showing the percentage of administrative expense allocated to each corporation for the years 1953 and 1954 is as follows:

BAKERIES CO. *v.* JOHNSON, COMMISSIONER OF REVENUE.

|                                   | 1953 | 1954 |
| --------------------------------- | ---- | ---- |
| "American Bakeries Company        | 83.0 | 83.7 |
| Cushman's Sons, Inc.              | 15.3 | 15.2 |
| Purity Bakeries Corporation       | 1.0  | 1.1  |
| Taystee Baking Company            | 0.7  | *    |
|                                   | 100  | 100  |

*Merged into American Bakeries
Company 12/31/53.

"(j)   The only subsidiary which paid any dividends during the years involved was Cushman's Sons, Inc., which paid dividends to its parent company, Purity Bakeries Corporation, until June 13, 1953, in the total amount of $182,364. After the merger of Purity Bakeries Corporation on June 14, 1953, with American Bakeries Company, Cushman's Sons, Inc. paid dividends to its parent in the amount of $182,819. Cushman's Sons, Inc. also paid dividends to its parent, American Bakeries, in the year 1954.

"(k)   Cushman's Sons, Inc. maintained separate records and books of account from those of the parent, American Bakeries Company. The income of each company can be determined from the separate records and books of account of each company.

"(l)   American Bakeries Company is engaged exclusively in the wholesale bakery business and manufactures bakery products for sale to business customers not owned or controlled by American Bakeries Company, such as some of the chain grocery stores.

"(m)   Cushman's Sons, Inc. engages in the retail bakery business and manufactures its own bakery products which it sells to the general public, including restaurants and cafes.

"(n)   There were no inter-company loans during any of the years involved. There may have been a transfer of some personal property between companies; however, if this were ever the case all such personal property would have been billed to the receiving company at book value and the billing would have been paid by check. Any exchange of products or purchases between the parent and subsidiary was very minor as shown by the following schedule:

|                                   | 1953*         | 1954           |
| --------------------------------- | ------------- | -------------- |
| "Sales (cents omitted)            |               |                |
| American Bakeries Company         | $62,342,072   | $113,905,351   |
| Cushman's Sons, Inc.              | 11,099,362    | 19,510,223     |
|                                   | $73,441,434   | $133,415,574   |
| Inter-company net transfers       | $   65,594    | $     52,866   |

*Period involved:
6/15/53 to 12/31/53

"(o)    In including the dividend income received from a subsidiary in allocable income of American Bakeries Company, the North Carolina Commissioner of Revenue has allowed no credit for the property, sales or payroll factors producing such income.

"(p)    The subsidiary, herein, Cushman's Sons, Inc., conducts no business activities in North Carolina.

"(q)    The United States Treasury Department through an Internal Revenue Agent made adjustments to the income of American Bakeries Company for the years 1953 and 1954, which are the years involved herein. Final agreement with the United States Treasury Department was consummated in 1959, which was more than three years after the due date or filing date of income tax returns for the years involved to the State of North Carolina by American Bakeries Company. The adjustments and changes made by the Internal Revenue Agent were immediately reported to the State of North Carolina and the additional tax due the State of North Carolina as a result of these adjustments and changes were paid to the State. Upon receipt of the report and check the State calculated the interest due on the additional payment. In addition, the Commissioner made adjustments to the income to American Bakeries Company which had not been made by the Internal Revenue Agent by including dividend income from the subsidiary, Cushman's Sons, Inc., in the allocable income of American Bakeries Company during the years involved.

"5.    The following schedule reflects the difference between,

"(1)    the amount of tax due the State of North Carolina for the years 1953 and 1954 as computed by the Commissioner of Revenue, including the amounts in controversy, and

"(2)    the amount of tax which would be due the State of North Carolina under applicable income tax statutes for the years 1953 and 1954, if American Bakeries Company and its subsidiary, Cushman's Sons, Inc., had filed consolidated income tax returns in North Carolina for those years.

|  | 1953 | 1954 |
|---|---|---|
| "Tax as computed by Commissioner including amounts in controversy, number (1) above | $42,307.45 | $66,120.81 |
| Tax computed on a consolidated basis of American Bakeries Company and its subsidiary, Cushman's Sons, Inc., number (2) above | $35,854.80 | $60,045.06 |
| Difference | $ 6,452.65 | $ 6,075.75 |

"6. If the income tax allocation formula, under North Carolina statutes, included the property and cost of manufacture of the subsidiary, Cushman's Sons, Inc., which produced the income of Cushman's Sons, Inc. on a consolidated basis with American Bakeries Company, the tax due the State of North Carolina (1) for the year 1953 would have been $6,452.65 less than the amount computed by the North Carolina Commissioner of Revenue, and (2) for the year 1954 would have been $6,075.75 less than the amount computed by the North Carolina Commissioner of Revenue.

"Upon the foregoing findings of fact, the court made the following conclusions of law:

"1. The defendant acted within his power in making the additional assessments for the years 1953 and 1954 pursuant to G.S. 105-159 following corrections and changes in plaintiff's Federal tax returns by the Federal authorities.

"2. The business of plaintiff in North Carolina and the business of its subsidiary, Cushman's Sons, Inc., is unitary.

"3. Defendant properly included in plaintiff's income apportionable to the State of North Carolina dividends received from plaintiff's subsidiary, Cushman's Sons, Inc., without taking into consideration Cushman's Sons, Inc.'s property, payroll and sales in allocating and apportioning plaintiff's taxable income to the State of North Carolina.

"4. Plaintiff is not entitled to relief prayed for in its complaint.

"Upon the foregoing findings of fact and conclusions of law, it is CONSIDERED, ORDERED and ADJUDGED that plaintiff take nothing by its complaint, that this action be dismissed, and that the costs be taxed against the plaintiff."

The plaintiff appeals, assigning error.

*Attorney General Bruton; Asst. Attorney General Peyton B. Abbott for the State.*

*Smith, Leach, Anderson & Dorsett for plaintiff.*

*Joyner & Howison, Amicus Curiae, for Southern Railway Company.*

DENNY, C.J. Two questions are presented for determination on this appeal:

1. Whether dividends paid to the plaintiff (taxpayer) by its subsidiary corporation derived from the earnings of the subsidiary's manufacture and sales of bakery products outside of North Carolina, are subject to income taxes imposed by North Carolina pursuant to the provisions of G.S. 105-134.

2. Whether the North Carolina Commissioner of Revenue is limited in adjustment of plaintiff's income tax returns to the area of Federal changes when changes in the Federal income tax returns are made by the Federal authorities; and more than three years have passed since the filing and due date of such returns; and plaintiff complies with the statute regarding filing reports of the Federal changes with the North Carolina Commissioner.

The appellant, American Bakeries Company, is a Delaware corporation with its principal office in Chicago, Illinois. Its subsidiary, Cushman's Sons, Inc., is a New York corporation, owns no property in North Carolina, is not domesticated in this State, and has never carried on any business activities in North Carolina.

American Bakeries Company voluntarily paid all taxes due the State of North Carolina pursuant to the formula arrived at pursuant to the provisions of G.S. 105-134, except the taxes assessed by the State on dividends received by the appellant from its subsidiary, Cushman's Sons, Inc., during the years 1953 and 1954. These taxes were paid under protest.

On the facts found, the court below concluded that the business of American Bakeries Company in North Carolina, and the business of its subsidiary, Cushman's Sons, Inc., is unitary. The court below likewise found that "American Bakeries Company is engaged exclusively in the wholesale bakery business and manufactures bakery products for sale to business customers not owned or controlled by American Bakeries Company, such as some of the chain grocery stores"; and that "Cushman's Sons, Inc., engages in the retail bakery business and manufactures its own bakery products which it sells to the general public, including restaurants and cafes."

In *Maxwell, Comr. v. Mfg Co.*, 204 N.C. 365, 168 S.E. 397, 90 A.L.R. 476, this Court said: "That term (unitary) is simply descriptive, and primarily means that the concern to which it is applied is carrying on one kind of business — a business, the component parts of which are too closely connected and necessary to each other to justify division or separate consideration, as independent units. By contrast, a dual or multiform business must show units of a substantial separateness and completeness, such as might be maintained as an independent business (however convenient and profitable it may be to operate them conjointly), and capable of producing a profit in and of themselves.

"Conceding that a unitary business may produce an income which must be allocated to two or more states in which its activities are carried on, such business may not be split up arbitrarily and conventionally in applying the tax laws. It would seem to be necessary

that there should be some logical reference to the production of income * * *."

As we interpret our tax laws, the mere fact that a foregin corporation engaged in business in North Carolina and other states, owns a subsidiary corporation in another state, which subsidiary does no business in North Carolina and owns no property in this State but is engaged in a similar business to that of the parent corporation, such factual situation does not of itself require the parent corporation to prorate the dividends received from such subsidiary to all the states in which the parent corporation does business.

Certainly the parent corporation controls and supervises its subsidiary, but the stipulations and facts found below clearly establish the fact that Cushman's Sons, Inc. is not a customer of American Bakeries Company or engaged in selling its products. In other words, this subsidiary is not a retail outlet for the parent coroporation, but manufactures its own bakery products and sells them to the retail trade, not to or through the parent corporation.

In the case of *Hans Rees' Sons v. N. Carolina ex rel Maxwell*, 283 U.S. 123, 75 L. Ed. 879, Chief Justice Hughes, speaking for the Court, said: "Undoubtedly, the enterprise of a corporation which manufactures and sells its manufactured product is ordinarily a unitary business, and all the factors in that enterprise are essential to the realization of profits. The difficulty of making an exact apportionment is apparent and hence, when the state has adopted a method not intrinsically arbitrary, it will be sustained until proof is offered of an unreasonable and arbitrary application in particular cases. But the fact that the corporate enterprise is a unitary one, in the sense that the ultimate gain is derived from the entire business, does not mean that for the purpose of taxation the activities which are conducted in different jurisdictions are to be regarded as 'component parts of a single unit' so that the entire net income may be taxed in one state regardless of the extent to which it may be derived from the conduct of the enterprise in another state. * * *

"When, as in this case, there are different taxing jurisdictions, each competent to lay a tax with respect to what lies within, and is done within, its own borders, and the question is necessarily one of apportionment, evidence may always be received which tends to show that a state has applied a method, which, albeit fair on its face, operates so as to reach profits which are in no just sense attributable to transactions within its jurisdiction."

In *Cargill v. Spaeth*, 215 Minn. 540, 10 N.W. 2d 728, the plaintiff, Cargill, Inc., was organized under the laws of Delaware, where it

maintained a statutory office for the purpose of continuing its right to exist and function as a corporation, but transacted no business in that State. The corporation had its general business office in Minneapolis, where all its corporate business was transacted. Its business consisted of merchandising, warehousing, and handling of grain and other commodities. Its operations extended to substantially every grain-producing state, including Nebraska and Illinois.

During the taxable periods involved, the taxpayer received dividends from three foreign corporations, which transacted no business in Minnesota and all of whose capital stock Cargill owned.

One of these subsidiaries was incorporated under the laws of Nebraska and conducted a grain business in that State. Another one was incorporated under the laws of Illinois and transacted substantially the same line of business as the parent corporation. The third subsidiary was incorporated in Delaware and was engaged in the transportation of grain by vessels on the Great Lakes and on the seas and by barges on the Erie Canal.

The Court said: "The separate entity of the parent and of the stock-owned subsidiaries was observed. Each transacted its own business as a separate corporation. In their intercorporate relations they made contracts, leases, and charges for services and use of money the same as if no such relationship existed. * * *

"Proof that the subsidiaries' stocks were not employed in the parent's business is not confined to the admissions. The other evidence supports the view that the separate corporate entities of the parent and the subsidiaries were punctiliously observed and that their intercorporate business was transacted as if no parent-subsidiary relationship existed. 'Where * * * the corporate separation is maintained and the subsidiary conducts its own business, the subsidiary, not the parent, is doing the business.' Garber v. Bancamerica-Blair Corp., 205 Minn. 275, 282, 285 N.W. 723, 727. Accord, Cannon Mfg. Co. v. Cudahy Packing Co., 267 U.S. 333, 45 S. Ct. 250, 69 L. Ed. 634."

The decision of the Supreme Court of Minnesota was to the effect that the commercial domicile of Cargill, Inc. was in the State of Minnesota, and that Cargill could only be taxed on dividends received from these subsidiaries in the state of its commercial domicile if the respective corporations were operated separately and were not merely one in fact; but if the corporations were so interrelated as to make up a single business unit, then the dividend income would have to be apportioned equitably among the states in which the parent corporation did business so there would be no danger of double taxation. The taxes assessed by the State of Minnesota against the parent corporation on

all the dividend income from the three subsidiaries were upheld. See *Southern Pacific Co. v. McColgan,* 68 Cal. App. 2d 48, 156 P 2d 81, and *Connecticut Gen. L. Ins. Co. v. Johnson,* 303 U.S. 77, 82 L. Ed. 673. See also 67 A.L.R. 2d Anno: Tax-Income of Foreign Corporation, page 1322.

In the case of *Standard Oil Co. v. Thoresen,* C.C.A. 8th Cir., 29 F 2d 708, the State of North Dakota made an additional assessment against the oil company, based upon the allocation to that State of a portion of the income made by the oil company in the business of producing crude oil from the ground, and in the business of manufacturing and refining crude oil, although it neither produced a barrel of crude oil in the State of North Dakota nor did it refine any oil in that State. Thereupon, the oil company brought suit to enjoin the collection of additional taxes assessed upon its business of the production and refining of oil done in other states.

The question posed for decision was this: "Does the law of the State of North Dakota require the plaintiff to pay taxes on its producing and refining oil business done altogether in states other than that State because of the fact it is engaged in the business of marketing refined oils in that State?"

The Court said: "In the first place, we are of the opinion from a reading and consideration of the many cases controlling here, the Legislature of the State in enacting the statute above quoted did not intend to impose a tax on the property of the plaintiff company or its income arising from the doing of business other than the character of business done in the State of North Dakota, that is, selling oil in that State. * * *"

The State of North Dakota contended that "(t)he business of plaintiff may and should, for the purpose of taxation, be regarded as a unit for the production, transportation, refining and marketing of oil. From a reading and consideration of the many cases on the subject we are not of that opinion. In some cases the unit theory of taxation attempted to be here applied is all right and has been upheld by the Supreme Court of our country in such cases as *Underwood Typewriter Co. v. Chamberlain, Treasurer of State of Conn.,* 254 U.S. 113, 41 S.Ct. 45, 65 L. Ed. 165, and in *Adams Express Co. v. Ohio,* 165 U.S. 194, 17 S.Ct. 305, 41 L. Ed. 683. * * *

"The plaintiff in this case is engaged in the production of crude oil in those states wherein crude oil is found. There is no crude oil discovered in the State of North Dakota. The plaintiff is also engaged in the manufacture or refining of crude oils in many states, but has not done so in the State of North Dakota. It has engaged in marketing

refined oil alone in that State. On its properties within the State of North Dakota employed in the business of marketing oil, and on the income arising from the doing of that business within the State of North Dakota it may be there taxed by the State and the tax must be paid. On its business of producing and refining oil it should be taxed only by the state in which this production is found or refining done. * * *"

In *Transportation Co. v. Currie, Comr. of Revenue,* 248 N.C. 560, 104 S.E. 2d 403 (affirmed 359 U.S. 28, 3 L. Ed. 2d 625; petition to rehear denied 359 U.S. 976, 3 L. Ed. 2d 843), this Court said: "Under the facts of this case we conclude that it is clearly manifest that the State of North Carolina has the right to collect the nondiscriminatory income taxes imposed on plaintiff, which taxes were imposed solely on that part of plaintiff's income earned within the State of North Carolina in its interstate business, and reasonably attributable to its interstate business done or performed within the borders of this State."

Likewise, in the case of *Power Co. v. Currie, Comr. of Revenue,* 254 N.C. 17, 118 S.E. 2d 155 (*certiorari* denied 367 U.S. 910, 6 L. Ed. 2d 1250), this Court, speaking through *Parker, J.* said: "In the apportionment of a unitary business the formula used must give adequate weight to the essential elements responsible for the earning of the income * * *."

In light of the stipulations entered into by the parties, and the facts found thereon in the court below, in our opinion, there is no valid legal basis for requiring the appellant to pay income taxes to the State of North Carolina on the dividends received from its subsidiary, Cushman's Sons, Inc., in 1953 and 1954, which dividends were paid out of earnings of the subsidary, no part of which was earned from business conducted or transacted in the State of North Carolina.

In view of the conclusion we have reached, we deem it unnecessary to discuss and consider other questions raised in connection with the first or second questions posed.

The judgment of the court below is

Reversed.