SPRING VALLEY COAL COMPANY *v.* STATE OF INDIANA.

[No. 24,832.    Filed December 17, 1926.]

1. STATES.—The general rule is that an action cannot be main-
tained against a state.    p. 625.

2. TAXATION.—*Statute for refunding taxes wrongfully collected
by county treasurer not applicable to taxes collected by state
official.*—The statute which provides for a refund · of taxes
wrongfully collected by a county treasurer (Acts 1919 p. 198,
372, §§332, 333, 334, §§14376-14378 Burns 1926) does not apply
where the taxes sought to be recovered were collected by a
state official or commission and were paid directly into the
state treasury.    p. 625.

3. TAXATION.—*Tax voluntarily paid cannot be recovered because
of invalidity of statute imposing it unless statute authorizes
it.*—Money voluntarily paid into the public treasury to dis-
charge a tax cannot be recovered because the statute imposing
the tax was illegal and void unless there is a statute author-
izing suit to be brought for that purpose, and the fact that
payment was made under protest does not change the rule.
p. 625.

4. TAXATION.—*Mere apprehension that nonpayment of tax would
necessitate some trouble and expense would not constitute
duress so as to authorize recovery of amount paid.*—Mere ap-
prehension by a taxpayer that he might be put to some trouble
and expense in conducting legal proceedings to protect his
rights if he did not pay the tax and fees imposed by a statute
would not constitute duress so as to authorize the recovery of
the amount paid even though the law imposing such tax and
fees was illegal.    p. 625.

5. STATES.—*Statute creating court of claims against the state
does not authorize filing of claim that would not be valid against
private corporation.*—The act of 1895 (Acts 1895 p. 231, §1550
Burns 1926), creating a court of claims against the state and
granting the right to bring an action against the state to
recover money due from it on contract does not give a right of
action against the state where the claimant would not have
a right of action against a private corporation.    p. 625.

6. TAXATION.—*Taxpayer voluntarily paying tax imposed by Coal Commission Act of 1920 could not recover amount paid in action against the state.*—One who voluntarily paid the tax and fees imposed by the Coal Commission Act of 1920 (Acts 1920 [Spec. Sess.] p. 143, §§10052j5-10052b6 Burns' Supp. 1921) could not recover the taxes paid by prosecuting an action against the state under the act creating a court of claims (Acts 1895 p. 231, §1550 Burns 1926) regardless of the validity of the Coal Commission Act. p. 628.

From Marion Superior Court as a court of claims against the state (A 22,772) ; *Theophilus J. Moll,* Presiding Judge.

Action against the State of Indiana by the Spring Valley Coal Company to recover money paid as a license fee and tonnage tax under the Coal Commission Act of 1920. From a judgment for defendant, the plaintiff appeals. *Affirmed.*

*J. B. Filbert,* for appellant.

*Arthur L. Gilliom,* Attorney-General and *Connor D. Ross,* Assistant Attorney-General, for the State.

EWBANK, J.—Appellant, as the plaintiff below, commenced an action in the superior court of Marion county, Indiana, sitting as a court of claims (§1550 Burns 1926, Acts 1895 p. 231), to recover from the State of Indiana money paid as a license fee and as a tonnage tax under the provisions of §§7 and 13, Acts 1920 [Spec. Sess.] p. 143, in the aggregate sum of $854.41. A demurrer to the complaint for the alleged reasons that the court was without jurisdiction of the person of the defendant or the subject-matter of the action, and that the complaint did not state facts sufficient to constitute a cause of action, was sustained, and upon plaintiff's refusal to plead over or amend, a final judgment was rendered that it take nothing, from which it appealed. The complaint was filed on September 8, 1923, and alleged that for more than four years last

past, the plaintiff corporation had owned and operated. a coal mine in the State of Indiana, located upon a designated railroad, with no means of transportation for its product except by rail. That after the said act of 1920 took effect, the members of the State Board of Accounts (§12637 Burns 1926, §2, Acts 1909 p. 136) organized as a Special Coal and Food Commission, and early in August, 1920, made an order that it should thereafter be unlawful to mine coal within the state without procuring from the commission a license so to do, and sent to plaintiff a copy of the order, together with a form of application for a license and a letter from the chairman, "telling plaintiff that the powers granted the commission in said act of the general assembly would be made use of in full and that any person, firm or corporation failing or refusing to obey any order of the commission would be promptly dealt with through the machinery of the criminal courts of the state and the penalties provided for in the act strictly enforced. And at the same time the chairman gave out interviews through the press that the commission would not stand for any opposition to its orders, and that if necessary to secure obedience thereto, the Governor would use the military power and the mines of the state would be seized and operated by it." That upon learning these facts, plaintiff applied for and obtained a license to mine coal "and paid the fee of $25 as ordered, but with such remittance sent a protest in writing denying the validity of said act of the legislature and denying the right of the commission to make any order thereunder and of the commission or the state to collect or receive the money so paid." That in the meantime, and before plaintiff had paid the license fee, the Vandalia Coal Company had applied to the United States court for the district of Indiana to obtain a restraining order and injunction forbidding the commission and its

members to enforce the provisions of the act, in deciding which, the judge had said that "the question of the license fees the court would not deem a sufficient basis for issuing an injunction *pendente lite* because, as far as our information of the Indiana law goes, the plaintiff would have an adequate remedy by paying under protest, and bringing an action for the recovery of the amount paid, with interest," of which opinion, the commission had sent plaintiff's officers a copy. That about the first of September, 1920, plaintiff received from the commission a form for making tonnage production reports, "with the further request that such report be carefully and correctly made and remittance of one cent per ton for the coal mined by plaintiff during the month of August be promptly made, and that such remittance only would save the revocation of plaintiff's right to continue the operation of its mine and its subjection to prosecution in the criminal court of the state." Thereupon and thereafter, in each of the seven months following, plaintiff made a report of the amount of coal mined by it and a remittance of one cent per ton as the tax thereon, the total amount paid by plaintiff, including the license tax, "up to and including the last month of the life of the commission," being $854.41, which money was by the commission "deposited with the treasurer of state." That in November, 1920, the United States district court issued a restraining order and injunction forbidding the commission to enforce its order directing the shipment of coal by the party therein complaining, after which, many operators of coal mines within the state failed and refused to pay the tonnage tax, and no effort was ever made by the commission or other state authorities to enforce payment against any delinquents. "That at the time plaintiff paid said money and each installment thereof into the state treasury through said commission, it believed and had good rea-

son to believe a failure or refusal to do so would result in its being subjected to costly litigation by the executive department of the state government and deprived of the possession and use of its mine, and thereby suffer great and irreparable loss." That no part of said money has been repaid to plaintiff and the same is now due. Facts were also alleged to the effect that if all engaged in mining and marketing coal had paid the license fees and tonnage tax, more than $200,000 of revenue would have been produced, and that more than $120,000 was actually paid into the state treasury on this account, but that the commission's "necessary expenses could not and did not exceed $10,000"; that an abundance of coal was mined and ready to be mined in the State of Indiana and in other states, and "coal on the ground went begging at the usual low price," while the scarcity of coal at a distance from the mines was due solely to a lack of means of transportation by railroads. And conclusions were alleged to the effect that said act of 1920 was unconstitutional for each of a number of reasons, the several sections of the state and federal constitutions charged to have been violated being specified.

Counsel have argued at considerable length the propositions that each of certain provisions of the act of 1920 is in conflict with some constitutional provision, and insist that because those provisions were (as they complain) unconstitutional, others were also invalid which required each operator of a coal mine to pay a license fee of $25, and a further "license fee of one cent" thereby "imposed upon every ton of coal mined in this state after the taking effect of this act," and provided that the money so collected should be "used in paying the expenses of said commission, including salaries, compensation and expenses of the commissioners, agents, clerks, employees, special counsel and assistants," with the further provision that if the money so

paid was "not sufficient for that purpose, there is hereby appropriated out of the treasury and out of the funds not otherwise appropriated a sum sufficient to pay all said expenses." §13, Acts 1920 [Spec. Sess.] p. 143.

But, whether or not the act of 1920 was unconstitutional, the complaint was insufficient and the judgment sustaining a demurrer thereto was correct unless the facts alleged were sufficient to show that the plaintiff had a cause of action against the State of Indiana which it had the right to maintain in the court where the suit was commenced. The general rule is that an action cannot be maintained against the state, and so far as the facts of this case are concerned that rule is subject only to the exception that "any person or persons having or claiming to have a money demand against the State of Indiana, arising, at law or in equity, out of contract, express or implied, accruing within fifteen years from the time of the commencement of the action, may bring suit against the state therefor in the superior court of Marion county, Indiana, by filing a complaint * * * and procuring a summons * * *; and jurisdiction is hereby conferred upon said superior court of Marion county, Indiana, to hear and determine such action * * *." §1550 Burns 1926, Acts 1895 p. 231. For the statute which provides for a refund by the board of commissioners to the taxpayer of money wrongfully collected by a county treasurer has no application to a case like this where the taxes sought to be recovered were collected by an agent who represented only the state and were paid directly into the state treasury. §§14376-14378 Burns 1926, §§332-334, ch. 59, Acts 1919 p. 198 (372). That the complaint did not state a cause of action to recover on a money demand arising out of an express contract with the state is evident. But

counsel for plaintiff contend that the facts alleged show the state to have exacted money from plaintiff under circumstances which made it liable as for money had and received, while counsel for defendant insist that they merely show a voluntary payment to have been made by plaintiff, which the state is under no obligation to refund, even though payment could not have been lawfully enforced. That money voluntarily paid into the public treasury to discharge a tax cannot be recovered back by reason of the tax being irregular, or void on account of the statute under authority of which it was sought to be imposed having been invalid, unless there is a statute authorizing a suit to be brought for that purpose, is abundantly settled by authority; and the mere fact that the payment was made under protest does not change the rule. *Jackson Hill Coal, etc., Co.* v. *Board, etc.* (1914), 181 Ind. 335, 338, 104 N. E. 497, and authorities cited; *Nyce* v. *Schmoll* (1907), 40 Ind. App. 555, 559, 82 N. E. 539; *Board, etc.,* v. *Ruckman* (1877), 57 Ind. 96, 98. Counsel cite and rely upon authority to the effect that where a payment of money to the state which was not owing was compelled by duress there was an implied promise to repay the money thus exacted that could be enforced by an action against the state for money had and received. *State* v. *Mutual Life Ins. Co.* (1910), 175 Ind. 59, 72, 75, 76, 93 N. E. 213. But the facts alleged in the complaint fall short of showing that the money sued for in this action was paid under duress. The statute purporting to create a special coal and food commission contained a section reading as follows: "§11. No penalty shall be inflicted or fine or imprisonment imposed upon any person for violating any order of the commission except requiring the production of books, papers, documents and data or for refusal to testify, if he shall within the time prescribed file his complaint in the Marion Circuit Court to va-

cate such order, all as herein prescribed, and promptly prosecute the same until after such cause shall have been finally disposed of in said circuit court, and until so disposed of the said order of the commission shall not be deemed or held to be final so far as the criminal and penal provisions of this statute are concerned." §11, Acts 1920 [Spec. Sess.] p. 143. The act also provided that, "any person, copartnership, or corporation against whom any final order is made by such commission, being dissatisfied therewith * * * may within ten days from the entry of such final order commence an action in the Marion Circuit Court of Marion county, Indiana, against said commission as defendant to vacate and set aside any such order * * *." §4, Acts 1920 [Spec. Sess.] p. 143. And that the power of the commission to revoke and annul any licenses issued by it should be "subject, however, to the right of the person, firm or corporation whose license is so revoked or annulled to commence an action in the Marion Circuit Court to set aside such order revoking or annulling his or its license subject to the same provisions as are fixed by §4 hereof for commencing an action to set aside or vacate orders made by the commission." §7, Acts 1920 [Spec. Sess.] p. 143. In view of these provisions, the alleged "threats" of the commission by which plaintiff claims to have been induced to pay into the state treasury the money it seeks to recover back, amounted to no more than a notice that it must either pay the money demanded or bring an action in the circuit court of Marion county to determine whether or not it was lawfully bound to do so, during the pendency of which action, if timely begun, no penalty would be inflicted or fine or imprisonment imposed, and the order of the commission thus appealed from would not be final so far as the criminal and penal provisions of the statute were concerned.

Mere apprehension on the part of plaintiff that it might be put to some trouble and expense in the matter of legal proceedings if it did not pay the money was not sufficient to constitute duress or to make the payment other than a voluntary payment, even if it should be true, as counsel insist, that the license fee and tax were illegal. *Town of Ligonier* v. *Ackerman* (1874), 46 Ind. 552, 562, 565, 15 Am. Rep. 323. "The law is now well settled that money voluntarily paid, under no mistake of fact, and without fraud or imposition upon the party paying it, cannot be recovered, although it was not legally due, and it makes no difference that the money was paid under compulsion of legal process; it may still be lawfully retained by the party receiving it, if there were no fraud on his part and no undue advantage taken by him of the situation of the other party." *Hollingsworth* v. *Stone* (1883), 90 Ind. 244, 246.

Certainly, the act granting the right to bring an action against the state to recover money due from it on contract does not give any right of action against the state where the plaintiff would not have a right of action against a private corporation or an individual, because of the money sought to be recovered having been voluntarily paid. And, under the facts alleged in the complaint, nothing more is shown than a payment by plaintiff in compliance with the terms of a statute of certain sums of money as license fees and taxes, made voluntarily, in preference to incurring the expense and inconvenience of presenting to the circuit court in the method provided by statute questions as to whether or not plaintiff was liable for them. The law does not create an implied contract to repay voluntary payments thus made. No error was committed in sustaining the demurrer to the complaint.

Since plaintiff would have no right of action under the facts alleged, even though the act of 1920 creating the Food and Coal Commission were unconstitutional, as it insists, we find it unnecessary to consider and therefore do not pass upon any questions as to the constitutionality of that act.

The judgment is affirmed.