GULF OIL CORPORATION v. I. L. CLAYTON, COMMISSIONER OF REVENUE OF NORTH CAROLINA.

(Filed 13 April, 1966.)

**1. Taxation § 36—**

A taxpayer asserting that an additional assessment of income tax is illegal because assessed upon income from its subsidiaries in no way derived from its operations within the State, may pay the additional assessment under protest and sue for its recovery under G.S. 105-267, and the contention that the sole remedy is under G.S. 105-134(6)(g) by appeal to the Tax Review Board before it may have the Superior Court determine the legality of the assessment, is untenable.

**2. Taxation § 28b—**

The Commerce Clause of the Federal Constitution permits a state to tax only that part of the net income of a multistate corporation which is attributable to earnings within the state.

**3. Same—**

Where a corporation doing business in this State and other states has controlling interest in subsidiaries carrying on like business wholly outside this State, each subsidiary operating as a separate entity with separate records, *held* dividends received by the parent corporation from such foreign subsidiaries are not subject to apportionment for income tax by this State.

**4. Same—**

Dividend income from foreign subsidiaries received by a multistate corporation domesticated here may not be prorated for income taxation here even though the foreign subsidiaries are engaged in business similar to that of the domesticated parent unless such income from the subsidiaries is attributable to business activities within this jurisdiction or the activities of the corporations are so interrelated as to make it impossible to identify with reasonable certainty the various sources of the parent company's total earnings so that the parent corporation and its subsidiaries are engaged in a "unitary business." G.S. 105-134(2)(a).

**5. Taxation § 23—**

A taxpayer is entitled to minimize its taxes by any means which the law permits, and such tax avoidance is not tax evasion.

MOORE, J., not sitting.

PLESS, J., took no part in the consideration or decision of this case.

APPEAL by defendant from *Peel, J.,* September 1965 Regular Non-jury Session of WAKE, docketed in the Supreme Court as Case No. 543 and argued at the Fall Term 1965.

Plaintiff instituted this action under G.S. 105-267 to recover the sum of $178,337.00 (with interest), which the original defendant W. A. Johnson, Commissioner of Revenue of North Carolina, demanded from it as additional income taxes for the years 1959 and 1960, and which plaintiff paid under protest. W. A. Johnson thereafter resigned, and I. L. Clayton, present Commissioner of Revenue, was substituted as defendant.

When the case was called for trial, defendant demurred *ore tenus* to the complaint on the ground that the Superior Court had no original jurisdiction of the action and that plaintiff should have commenced the proceedings by a petition to the Tax Review Board, augmented by the presence of the Commissioner of Revenue. The court overruled this demurrer, and defendant excepted. The parties then stipulated the facts determinative of the controversy. The stipulations relate to the years 1959 and 1960 and are summarized as follows:

Plaintiff is a Pennsylvania corporation authorized to do business in North Carolina, other states, and foreign countries. It is en-

gaged in producing oil and natural gas and in the refining, transporting, and marketing of petroleum products. It carries on each of these activities under the direction of a vice-president in charge of a separate department, which operates independently of any other within plaintiff's organization. Each department has its own budget, employees, and equipment, and is required to show an accounting of its expenses and income. All transactions of plaintiff's marketing department with other departments or subsidiaries of plaintiff are and have been conducted at "fair" market value. In North Carolina, plaintiff was engaged only in the business of marketing refined petroleum products and such accessory items as are customarily sold at gasoline filling stations. All petroleum products which plaintiff sold in North Carolina were manufactured at its refinery in Port Arthur, Texas. This refinery processed no oil from any foreign source.

Plaintiff, *inter alia,* owns all or at least 50% of the voting stock in the following subsidiary corporations:

(1)  *Gulf Exploration Company,* a Delaware corporation, is engaged in the purchase and sale of crude oil in Europe, Africa, and the Far East. All the crude oil which Gulf Exploration Company sold was purchased from its wholly owned subsidiary, Gulf Kuwait Company, a corporation owning a one-half interest in an oil concession and refinery producing low-grade petroleum products in the Persian Gulf country of Kuwait. Gulf Kuwait Company sold ⅔ of its crude oil to purchasers which had no connection with plaintiff and ⅓ to Gulf Exploration, which ultimately sold less than 1% of it to plaintiff. None of this oil, which was processed in plaintiff's Philadelphia refinery, was sold or delivered in North Carolina.

(2)  *Gulf Iran Company,* a Delaware corporation, owns all the capital stock of Gulf International Company, which has an interest in an oil concession in Iran, where it produces and refines crude oil. Gulf Iran Company engages chiefly in the purchase and sale of crude oil and carries on its business operations in the same manner as does Gulf Exploration Company. In 1959, Gulf Iran Company sold no crude oil to plaintiff but did sell to it, at market price, some fuel oil for use in plaintiff's ships calling at Iranian ports. All other crude oil and petroleum products which Gulf Iran purchased from Gulf International were sold and delivered outside of the United States to companies not connected with plaintiff.

(3)  *Gulf Italia Company,* a Delaware corporation, was engaged in the production and sale of crude oil in Sicily, where its business was conducted. None of this oil was sold to plaintiff.

(4) *British American Oil Company, Limited* is a Canadian corporation which duplicates the activities of plaintiff. Its business is conducted from its offices in Canada. In 1959, the corporation made no sales to plaintiff. In 1960, at market price, it sold plaintiff some crude oil which plaintiff processed in Ohio and sold outside of North Carolina.

None of the subsidiary corporations listed above were domesticated in North Carolina, or owned property here, and none conducted any business activities within the State. Business transactions between them and plaintiff were limited to those already enumerated, and all were conducted at fair market value, *i.e.*, no benefit inured to plaintiff by reason of the corporate kinship. No products from any of the subsidiaries ever had any connection whatever with North Carolina. The earnings which produced the dividends which the subsidiaries paid plaintiff were all subject to taxation elsewhere, *i.e.*, in Kuwait, Iran, Italy and Canada, respectively. The net income of each subsidiary is shown on separate books and records of accounts maintained by each entirely outside of North Carolina. There is no interchange or sharing of patents or trademarks between them and plaintiff. Each subsidiary paid its prorata share of the cost of every service which plaintiff or any other subsidiary performed for it.

The following schedule indicates the dividends paid plaintiff by its subsidiaries, together with the income tax and interest which was assessed thereon by defendant, and paid under protest by plaintiff:

|  | DIVIDENDS PAID | | COMMISSIONER'S ASSESSMENT | |
|---|---|---|---|---|
|  | 1959 | 1960 | 1959 | 1960 |
| Gulf Exploration Co. | $104,000,000 | $100,000,000 | $66,051 | $101,337 |
| Gulf Iran Co. | 2,500,000 | NONE | 1,588 | NONE |
| Gulf Italia Co. | NONE | 3,000,000 | NONE | 3,040 |
| British American Co. Ltd. | 3,635,632 | 3,958,718 | 2,309 | 4,012 |
| Totals | $110,135,632 | $106,958,718 | $69,948 | $108,389 |
| GRAND TOTALS: | Dividends paid. | $217,094,350 | | |
|  | Assessment: | 178,337 | | |

Upon the foregoing stipulations, the trial judge "found and concluded": Gulf Exploration Co., Gulf Iran Co., and Gulf Italia Co. were not engaged in a business of a type similar to that which plaintiff conducted in North Carolina. They were operated as independent businesses, unrelated to plaintiff's activities in the State. Plaintiff's business here in no way contributed to the dividends which the four

subsidiaries paid it, and they derived no income from any activity or property in North Carolina. The dividends here involved, therefore, did not constitute income which was reasonably attributable to any business activities conducted by plaintiff in this State, and defendant was without authority to subject these dividends to income taxation. From judgment decreeing that the assessment was unlawful and that plaintiff is entitled to recover of the defendant the sum of $178,337.00, with interest at 6% from March 26, 1963, defendant appeals.

　　*Smith, Leach, Anderson & Dorsett for plaintiff appellee.*
　　*Attorney General Bruton, Deputy Attorney General Abbott for defendant appellant.*

　　SHARP, J.　Defendant Commissioner's first contention is that the Superior Court had no original jurisdiction under G.S. 105-267 to review the allocation and apportionment, made under G.S. 105-134, of the income of a corporation transacting business partly within and partly without North Carolina. He asserts that G.S. 105-134(6)(g) limits original jurisdiction to review such an allocation or apportionment to the Tax Review Board, augmented by the presence of the Commissioner of Revenue himself. This section provides that if any corporation believes that the statutory method of allocation or apportionment, as administered by the Commissioner, has operated, or will operate, so as to subject to taxation "a greater portion of its income than is reasonably attributable to earnings within the State, it shall be entitled to file with the Tax Review Board a petition setting forth the facts upon which its belief is based and its argument with respect to the application" of the allocation formula. It authorizes the "augumented Board" to vary the statutory formula if another will more clearly reflect the income attributable to business within the State, and it prohibits any corporation from using an alternative formula except with the Board's permission.

　　In our opinion, it was not the intention of the Legislature, when, by Pub. L. 1953, ch. 1302, § 4, it amended G.S. 105-134, to require a corporation to secure a ruling from the augmented Tax Review Board before it might have the Superior Court determine the legality of a tax assessment against specific items of its income earned outside of North Carolina, no part of which, it contends, is allocable to North Carolina. The purpose of G. S. 105-134(6)(g) was not to provide either a substitute for, or an alternative to, G.S. 105-267, but to afford relief from the apportionment formula of G.S. 105-134(6) when it operates to tax a greater portion of a corporation's

income than is reasonably attributable to business in this State. Plaintiff here has not sought to vary the statutory formula for apportioning its income. It seeks to recover taxes which, it alleges, have been illegally assessed upon income not attributable to North Carolina and which, therefore, the State may not constitutionally tax. The statute under which it proceeds, G.S. 105-267, requires the taxpayer to pay the amount of the disputed tax and sue the State for its recovery. Such a method, has, in effect, been available to taxpayers since 1887 (Pub. L. 1887, ch. 137 § 84). It is appropriate procedure for a taxpayer who seeks to test the constitutionality of a statute or its application to him. The law does not contemplate that administrative boards shall pass upon constitutional questions. See *Insurance Co. v. Gold, Commissioner of Insurance,* 254 N.C. 168, 118 S.E. 2d 792. Had the General Assembly meant to deprive a corporation of the right to proceed under G.S. 105-267 when it contends that it has been illegally taxed upon income not attributable to business within the State, it would undoubtedly have said so. Plaintiff has strictly complied with the provisions of G.S. 105-267. We hold that it is entitled to proceed thereunder. *Bleacheries, Inc. v. Johnson, Comr.,* 266 N.C. 692, 147 S.E. 2d 177. See *Duke v. Shaw, Commissioner of Revenue,* 247 N.C. 236, 100 S.E. 2d 506.

The second question presented by this appeal is whether dividends from income earned outside North Carolina and paid to plaintiff by four of its subsidiary corporations, which were operated independently of plaintiff, are subject to taxation in North Carolina.

Every corporation doing business in North Carolina is required to pay an annual income tax equivalent to 6% of its net taxable income as defined by G.S. 105-140. "If the corporation is transacting or conducting its business partly within and partly without North Carolina, the tax shall be imposed upon a base which reasonably represents the proportion of the trade or business carried on within the State." G.S. 105-134. Such apportionment is designed to meet the due process requirement that a state show a sufficient nexus between such a tax and the transaction within a state for which the tax is an exaction, and the proscriptions of the Commerce Clause of the Federal Constitution which permit a state to tax only that part of a corporation's net income from multistate operations which is attributable to earnings within the taxing state. *Portland Cement Co. v. Minnesota,* 358 U.S. 450, 3 L. Ed. 2d 421; *Memphis Natural Gas Co. v. Beeler,* 315 U.S. 649, 86 L. Ed. 1090; *Butler Bros. v. McColgan,* 315 U.S. 501, 86 L. Ed. 991; *Western Live Stock v. Bureau of Revenue,* 303 U.S. 250, 82 L. Ed. 823, 115 A.L.R. 944;

*Norfolk & W. R. Co. v. North Carolina,* 297 U.S. 682, 80 L. Ed. 977;*Hans Rees' Sons v. North Carolina,* 283 U.S. 123, 75 L. Ed. 879. Upon these and other authorities, this Court has held that North Carolina has the right to collect nondiscriminatory income taxes from a corporation doing business both within and without the State, so long as such taxes are imposed solely on that part of its net income "earned within the State of North Carolina in its interstate business, and reasonably attributable to its interstate business done or performed within the borders of this State." *Transportation Co. v. Currie, Comr. of Revenue,* 248 N.C. 560, 577, 104 S.E. 2d 403, 415, *aff'd. mem.,* 359 U.S. 28, 3 L. Ed. 2d 625. *Accord, Bakeries Co. v. Johnson, Commissioner of Revenue,* 259 N.C. 419, 131 S.E. 2d 1; *Power Company v. Currie, Comr. of Revenue,* 254 N.C. 17, 118 S.E. 2d 155, *appeal dismissed,* 367 U.S. 910, 6 L. Ed. 2d 1250.

Defendant contends that, in G.S. 105-134, the Legislature expressed its intent to adopt as its basis for allocation or apportionment the *entire net income* of a corporation carrying on multistate operations, except for certain segments specifically allocated to other states; that by subsection (2) it excluded from apportionable income all corporate dividends, *"other than* (those from) stocks of a subsidiary corporation having business transactions with or being engaged in the same or similar type of business as the taxpayer"; that it thus *included* dividends from any subsidiary with which taxpayer transacted business or which was engaged in the same or similar type of business as that carried on by the taxpayer anywhere, irrespective of where the subsidiary did its business; that all of the subsidiaries with whose dividends we are here concerned were engaged, albeit not in North Carolina, in the same or similar business in which plaintiff itself was engaged; and that there were business transactions between these subsidiaries and plaintiff, either directly or through other subsidiaries. Defendant argues, therefore, that these dividends were properly allocable and apportionable to North Carolina, even though the subsidiaries which paid them are not domesticated, carried on no business here, owned no property and sold none of their products in the State.

That contention, however, was rejected by this Court in *Bakeries Co. v. Johnson, Commissioner of Revenue, supra.* In that case, plaintiff, a Delaware corporation doing business in North Carolina, was engaged in the wholesale bakery business, manufacturing and selling its products to customers such as chain stores and restaurants. It had several subsidiaries; only one, Cushman Sons, Inc., paid dividends during 1953 and 1954. Cushman was also engaged in

the retail bakery business, manufacturing and selling its products to the general public entirely outside North Carolina. It was not domesticated here, did no business and owned no property in the State. It was not a retail outlet for American Bakeries, and sold none of its products to or through the parent corporation. Cushman maintained separate records and books, and paid for all services rendered it by the plaintiff. In reporting its income for the years 1953 and 1954, the plaintiff did not include the dividends it received from Cushman. The Commissioner adjusted these returns by including Cushman's dividends in the plaintiff's allocable income for the two years. The plaintiff paid the assessed taxes under protest and sued for refund (the same procedure adopted here). The Superior Court held that the dividends were properly included in plaintiff's income apportionable to North Carolina, but this Court reversed. The Court said:

> "As we interpret our tax laws, the mere fact that a foreign corporation engaged in business in North Carolina and other states, owns a subsidiary corporation in another state, which subsidiary does no business in North Carolina and owns no property in this State but is engaged in a similar business to that of the parent corporation, such factual situation does not of itself require the parent corporation to prorate the dividends received from such subsidiary to all the states in which the parent corporation does business." 259 N.C. at 426, 131 S.E. 2d at 6.

The Court concluded that where the separate entities of the domesticated parent and its foreign, dividend-paying subsidiary (engaged in a similar business outside of North Carolina) are maintained — each transacting its own business as a distinct corporation and dealing with the other as if no parent-subsidiary relation existed — North Carolina cannot tax the subsidiaries' dividends even though they are included in the parent's ultimate gains.

In reaching this decision the Court relied, *inter alia,* upon the case of *Hans Rees' Sons v. North Carolina, supra,* in which the Supreme Court of the United States declared that North Carolina's corporate income tax statute then in effect (Pub. L. 1923, ch. 4 § 201; Pub. L. 1925, ch. 101 § 201; Pub. L. 1927, ch. 80, § 311), was, as applied to plaintiff, unreasonable and repugnant to both the Commerce Clause and to § 1 of the 14th Amendment to the Federal Constitution. The plaintiff, a New York corporation, owned and operated a leather manufacturing plant in North Carolina, 40% of the output of which was shipped to plaintiff's warehouse in New

York. The other 60% was shipped on direct orders from New York where its sales office was located. Sales were made throughout this country, in Canada, and in Europe. It derived 17% of its average income from the North Carolina manufacturing operations. Contending that the plaintiff's buying, manufacturing, and selling of hides constituted a unitary business, the defendant, using the statutory formula, allocated to North Carolina approximately 75% of plaintiff's income for the four years in question. With reference to this allocation, Hughes, C.J., said:

> "When, as in this case, there are different taxing jurisdictions, each competent to lay a tax with respect to what lies within, and is done within, its own borders, and the question is necessarily one of apportionment, evidence may always be received which tends to show that a state has applied a method, which, albeit fair on its face, operates so as to reach profits which are in no just sense attributable to transactions within its jurisdiction.
>
> \* \* \*
>
> "(T)he statutory method, as applied to the appellant's business for the years in question, operated unreasonably and arbitrarily, in attributing to North Carolina a percentage of income out of all appropriate proportion to the business transacted by the appellant in that state." 283 U.S. at 134, 135, 75 L. Ed. at 906, 908.

The test then is not solely whether the business of a foreign subsidiary is *similar* to that in which the domesticated parent is engaging in North Carolina or elsewhere, or whether it has had business transactions with the parent elsewhere in the world. Conceding both similarity of businesses and intercorporate transactions outside the State, yet the dividend income which the subsidiary pays the parent cannot be constitutionally allocated to North Carolina and prorated for income taxation unless (1) it is attributable to business activities within this jurisdiction, or (2) the activities of the corporations are so interrelated as to make it impossible to identify the various sources of the taxpayer's total earnings with reasonable certainty. *Maxwell, Comr. v. Mfg. Co.*, 204 N.C. 365, 168 S.E. 397, 90 A.L.R. 476. Thus, it is only when the parent and subsidiary are engaged in a "unitary business" that G.S. 105-134 (2) (a) may be constitutionally applied without reference to whether dividend income is attributable to transactions within the taxing state. In purporting to tax dividends from subsidiaries "having business transactions with or engaged in the same or similar type

of business as the taxpayer," the Legislature was undoubtedly attempting to describe a unitary business in terms of its two most common indicia. In its application to such a business, the statute is clearly constitutional. We do not assume that the Legislature intended it to refer to any situation to which its application would be unconstitutional. See *Finance Co. v. Leonard*, 263 N.C. 167, 139 S.E. 2d 356; *Spiers v. Davenport*, 263 N.C. 56, 138 S.E. 2d 762; *Ice Cream Co., Inc. v. Hord*, 263 N.C. 43, 138 S.E. 2d 816.

The stipulations here exclude any serious contention that plaintiff and these four subsidiaries constitute a unitary business. Plaintiff is an industrial giant engaged in world-wide operations. As a result, it pays taxes to many states and foreign governments — sometimes as much as 50% of the posted price of crude oil after deducting the costs of production. Indeed, exploring ways to minimize taxes is as much a part of its business as exploring for new sources of oil. The several subsidiaries, which, in turn, own subsidiaries; the careful segregation of the activities, receipts, expenditures, and records of each; and the studied separateness of plaintiff's departments and subsidiaries — all working toward the same goal of greater profits for plaintiff — evidence a master plan of corporate organization designed to disprove a unitary operation and to minimize taxes. Defendant's argument that plaintiff's plan has been successful is beside the point. Tax avoidance by any means which the law permits is not tax exasion. 84 C.J.S., Taxation § 62 (1954).

Plaintiff's business is unitary only in the sense that its ultimate gain is derived from the entire business. This, however, "does not mean that for the purpose of taxation the activities which are conducted in different jurisdictions are to be regarded as 'component parts of a single unit' so that the entire net income may be taxed in one state regardless of the extent to which it may be derived from the conduct of the enterprise in another state. . . ." *Hans Rees' Sons v. North Carolina, supra,* quoted with approval in *Bakeries Co. v. Johnson, Commissioner of Revenue, supra* at 426, 131 S.E. 2d at 6.

It is not necessary for us to decide whether Judge Peel's findings and conclusions — that Gulf Exploration Company, Gulf Iran Company, and Gulf Italia Company were not engaged in business of a type similar to the business which plaintiff conducted in North Carolina — are correct. These conclusions are not determinative of this appeal, since it is quite clear that no part of the dividend income of any of the subsidiaries is attributable to North Carolina, and since plaintiff and its subsidiaries cannot be "regarded

---

---

as component parts of a single unit." The plaintiff is entitled to the refund for which it sues.

Affirmed.

MOORE, J., not sitting.

PLESS, J., took no part in the consideration or decision of this case.