THE COCA-COLA COMPANY v. J. HOWARD COBLE, SECRETARY OF REVENUE OF THE STATE OF NORTH CAROLINA

No. 57

(Filed 11 November 1977)

1. **Taxation § 38— unlawful tax—authority to refund**

    G.S. 150-266.1 conferred no authority on the Secretary of Revenue to refund taxes which, at the time they were collected, were unlawful but not erroneous or incorrect.

2. **Taxation § 38— soft drink tax—nonresident distributor—amount in excess of alternate method—voluntary payment**

    A nonresident distributor voluntarily paid the soft drink tax by means of taxpaid crowns or stamps rather than by the less expensive alternate method provided by G.S. 105-113.56A, and is not entitled to recover the amount paid in excess of the alternate method, where the distributor failed to demand a refund from the Secretary of Revenue within 30 days of payment pursuant to G.S. 105-267, notwithstanding the distributor was informed by the Department of Revenue that the alternate method was unavailable to it and the Court of Appeals thereafter held that the exclusion of nonresident distributors from the operation of the statute allowing the alternate method was unconstitutional.

3. **Taxation § 38— payment of tax—voluntariness—apprehension of civil suit**

    Mere apprehension on the part of a taxpayer that it might be put to some trouble and expense by having to commence judicial proceedings to challenge the legality of a tax is insufficient to constitute duress or to render payment of the tax involuntary.

    Justice HUSKINS dissents.

WE allowed discretionary review of the decision of the Court of Appeals, 33 N.C. App. 124, 234 S.E. 2d 477 (1977) (Morris, J., concurred in by Vaughn and Martin, J.J.), reversing judgment of *Herring, J.,* 22 July 1976 Session, WAKE Superior Court.

Plaintiff, a Delaware corporation, instituted this civil action to recover a portion of certain excise taxes paid on the distribution of its soft drink known as "Hi-C." The taxes were collected

pursuant to G.S. 105-113.45, which levied an excise tax of one cent per bottle on the ". . . sale, use, handling and distribution of all soft drinks . . ." in North Carolina. Under G.S. 105-113.51, the tax could be paid by affixing North Carolina taxpaid stamps or crowns to the soft drink containers. G.S. 105-113.56A afforded resident dealers and distributors an alternative means of payment whereby sales reports could be made to the Secretary of Revenue each month and a tax paid as follows: "For the first fifteen thousand gross of bottled soft drinks sold annually, seventy-two cents (72¢) per gross; for all in excess of fifteen thousand gross, one cent (1¢) per bottle. In addition, there shall be allowed a discount of eight percent (8%) of the said tax to be remitted."

The restriction of this lower tax rate and less burdensome method of payment to resident dealers and distributors was held by the Court of Appeals to be violative of the Commerce Clause of the United States Constitution. *Richmond Food Stores v. Jones,* 22 N.C. App. 272, 206 S.E. 2d 346 (1974). The Secretary of Revenue did not seek discretionary review of that decision in our Court.

During the tax years ending 30 September 1971, 1972, 1973 and 1974, plaintiff manufactured and distributed "Hi-C" in North Carolina and paid the soft drink excise tax by purchasing and affixing taxpaid crowns or stamps to its containers pursuant to G.S. 105-113.51, since it was not a North Carolina distributor and had not established a commercial domicile here. On several occasions during this period, plaintiff inquired of an official in the Department of Revenue whether it might utilize the alternate method of payment under G.S. 105-113.56A. The Department responded that the law did not permit plaintiff to use the alternate method. Relying on this, plaintiff continued to pay the tax without protest by means of taxpaid lids.

After the decision in *Richmond Food Stores v. Jones, supra,* plaintiff applied to the Secretary of Revenue under G.S. 105-266.1 seeking a refund of that portion of its taxes paid which exceeded the amount it would have paid under the alternate method. This claim for refund was denied and plaintiff filed suit. At trial, the court granted summary judgment for defendant as to plaintiff's claim for refund for the tax year ending 30 September 1971, since this claim was barred by the three year time limitation in G.S. 105-266.1(a). After the presentation of evidence was concluded, the

court found for plaintiff and entered judgment granting a refund of $32,400, representing an overpayment of $10,800 for each of the three tax years in question. Defendant appealed from that judgment and, as indicated above, the Court of Appeals reversed. No appeal was taken from the partial summary judgment for defendant.

*Attorney General Rufus L. Edmisten by Special Deputy Attorney General Myron C. Banks, for defendant-appellee.*

*Blanchard, Tucker, Twiggs & Denson by Charles F. Blanchard and R. Paxton Badham for plaintiff-appellant.*

COPELAND, Justice.

Plaintiff argues on this appeal that it is entitled to refund of a portion of its soft drink excise tax payments for the years in question. For reasons indicated below, this contention is overruled and the judgment of the Court of Appeals is affirmed.

While the tax in fact paid under G.S. 105-113.51 is not alleged to be unlawful, plaintiff maintains that, but for an unlawful restriction, it would have paid under the more favorable method in G.S. 105-113.56A. This situation is closely analogous to one in which a party pays a tax that later proves to be unconstitutional and then seeks a refund of those payments. "Taxes paid voluntarily and without objection or compulsion cannot be recovered, even though the tax be levied unlawfully." *Middleton v. Wilmington, Brunswick & Southern Railroad Company*, 224 N.C. 309, 311, 30 S.E. 2d 42, 43 (1944). Where there is express statutory authority, however, even voluntary payments may be recovered when mistakenly paid. *B-C Remedy Company v. Unemployment Compensation Commission*, 226 N.C. 52, 36 S.E. 2d 733 (1946).

Plaintiff first asserts that there is express statutory authority for refund of these taxes under G.S. 105-266.1, which reads, in part, as follows:

"(a) Any taxpayer may apply to the Secretary of Revenue for refund of tax or additional tax paid by him at any time within *three years* after the date set by the statute for filing of the return or . . . within six months from the date of payment of such tax or additional tax, whichever is later. The Secretary shall grant a hearing thereon, and if upon such

hearing he shall determine that the tax is *excessive or incorrect*, he shall resettle the same according to the law and the facts, and adjust the computation of tax accordingly." (Emphasis added.)

It is argued that the Secretary should have refunded that portion of the taxes plaintiff paid by purchase of taxpaid stamps and crowns which exceeded the amount payable under the alternate method. The Secretary's authority under G.S. 105-266.1, however, extends only to the resettlement of taxes which he finds *excessive or incorrect*. In the instant case, the tax is challenged as having been collected *unlawfully*.

In *Richmond Food Stores v. Jones, supra*, which held the restriction in G.S. 105-51 unconstitutional, refund was sought under G.S. 105-267. This statute permits a person with a valid defense to the collection of any tax to pay the tax and demand a refund within thirty days after payment. If no refund is forthcoming within 90 days, the party may then sue before the proper court for the amount claimed. As grounds for refund, G.S. 105-267 provides as follows: "If upon the trial it shall be determined that such tax or any part thereof was levied or assessed for an *illegal* or *unauthorized purpose*, or was for any reason *invalid* or *excessive*, judgment shall be rendered therefor, with interest, and the same shall be collected as in other cases." (Emphasis added.)

[1] As we have said earlier, our statutes and case law ". . . recognize a distinction between an erroneous tax and an invalid or illegal tax. An invalid tax results when the taxing body seeks to impose a tax without authority, as in cases where it is asserted that the rate is unconstitutional, or that the subject is exempt from taxation." *Redevelopment Commission of High Point v. Guilford County*, 274 N.C. 585, 589, 164 S.E. 2d 476, 479 (1968) (citations omitted). The Secretary of Revenue has no authority under G.S. 105-266.1 to order the refund of an invalid or illegal tax, since questions of constitutionality are for the courts. *Gulf Oil Corporation v. Clayton*, 267 N.C. 15, 147 S.E. 2d 522 (1966); *Great American Insurance Company v. Gold*, 254 N.C. 168, 118 S.E. 2d 792 (1961). While the tax here had already been held unconstitutional at the time plaintiff filed for refund, G.S. 105-266.1, by its express terms, confers no authority on the Secretary to refund taxes which, at the time they were collected, were unlawful but *not* erroneous or incorrect.

The appropriate remedy here was under G.S. 105-267, since it permits suits for refund of invalid *or* excessive taxes. Plaintiff, however, failed to demand a refund within the requisite time specified in the statute and thus is without recourse under this provision. The taxpayer here could have followed the same course used in *Richmond Food Stores*; nevertheless, having elected the route it would pursue, plaintiff is bound by its limitations. *Kirkpatrick v. Currie*, 250 N.C. 213, 108 S.E. 2d 209 (1959). Unfortunately for plaintiff, "The Moving Finger writes; and, having writ, moves on." E. Fitzgerald, *The Rubaiyat of Omar Khayyam*, st. 71. We therefore conclude that G.S. 105-266.1 fails to provide an exception to the general rule that voluntary payments of unconstitutional taxes are not refundable.

Plaintiff next contends that its payments were involuntary because it would have been subject to civil and criminal sanctions had it refused to pay the tax and, in the alternative, would have been compelled to become involved in a lawsuit to determine the constitutionality of the tax, which it did not wish to do. The threat of civil or criminal sanctions does not render the payments involuntary because, as noted earlier, plaintiff could have protected its rights by paying the tax and subsequently demanding a refund under G.S. 105-267 within thirty days of payment. Upon failure to receive the refund within ninety days, plaintiff would have been entitled to sue the Secretary of Revenue for the amount demanded. This procedure would have protected plaintiff against any possible civil or criminal sanctions, since the tax would have been paid, yet plaintiff's right to contest the legality of the restriction in the alternate payment method would have been preserved.

[2] We conclude from plaintiff's failure to make demand on the Secretary within the thirty day time limit that the payments were voluntary at the time they were made. While plaintiff did inquire of the Department of Revenue as to whether it could proceed under the alternate payment method, as we have already noted, the Executive Branch has no authority to declare legislative acts unconstitutional. *Great American Insurance Company v. Gold, supra.* If plaintiff paid the tax under duress, as alleged, it was free to follow the procedure under G.S. 105-267 for recovering unlawful payments. Having failed to demand refund within thirty days of payment, plaintiff now seeks the benefit of

the longer time period available under G.S. 105-266.1; however, as previously indicated, this provision may not be used to obtain a refund of taxes unlawfully collected. As pointed out by Justice Huskins, speaking for our Court in a different context, "The law does not permit [a party] to board the train after it has left the station." *Brock v. North Carolina Property Tax Commission*, 290 N.C. 731, 739, 228 S.E. 2d 254, 260 (1976).

[3] Plaintiff's contention that the payments were made under compulsion because of the necessity of commencing a civil lawsuit to recover them is likewise without merit. Mere apprehension on the part of a plaintiff that it might be put to some trouble and expense by having to commence judicial proceedings to challenge the legality of a tax is insufficient to constitute duress or render payments involuntary. 84 C.J.S. Taxation, § 636 (c), p. 1284 (1954); *Spring Valley Coal Company v. State*, 198 Ind. 620, 154 N.E. 380 (1926). Indeed, if we were to uphold this argument, challenged tax payments would never be voluntary because of the necessity of pursuing administrative or judicial action to secure a refund.

It is our conclusion that the payments here were voluntarily made, and, since plaintiff has established no exception to the general rule, no refund is due. For these reasons, the decision of the Court of Appeals is

Affirmed.

Justice HUSKINS dissents.